## IN THE COURT OF APPEALS OF IOWA

No. 15-0061
Filed August 5, 2015

IN RE THE MARRIAGE OF RUSSELL JAMES MERSMAN
AND JUDYTH JOANNE MERSMAN

Upon the Petition of
**RUSSELL JAMES MERSMAN,**
        Petitioner-Appellee,

**And Concerning**
**JUDYTH JOANNE MERSMAN, n/k/a JUDYTH JOANNE ALBRITTON,**
        Respondent-Appellee,

**And Further Concerning**
**JAROD J. PEDERSEN and HEATHER R. PEDERSEN,**
        Appellants.
_____

        Appeal from the Iowa District Court for Story County, Michael J. Moon,

Judge.



        Jarod and Heather Pedersen appeal from the denial of their "motion to

enforce decree and for specific performance." **AFFIRMED.**



        Donald G. Juhl, Nevada, for appellants.

        William T. Talbot of Newbrough Law Firm, L.L.P., Ames, for appellee

Judyth Mersman.

        John L. McKinney of John L. McKinney Law Office, Ames, for appellee

Russell Mersman.



        Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, J.**

Jarod and Heather Pedersen appeal from the district court's order granting Russell Mersman's and Judyth Albritton's motions to dismiss the Pedersens' "motion to enforce decree and for specific performance" directed to Mersman and Albritton's decree of dissolution. The Pedersens allege they are interested in purchasing a property in Nevada the court's decree awarded to Mersman and prescribed specific requirements for its sale. The district court did not err in granting the motions to dismiss. The general rule is that intervention "will not be allowed after final judgment or decree has been entered." *Morse v. Morse*, 77 N.W.2d 622, 628 (Iowa 1956). Any claim the Pedersens have against Mersman[1] is based upon his alleged post-decree breach of a sales contract to which Judyth Albritton was not a party.

**I. Background Facts and Proceedings.**

A decree dissolving the marriage of Russell Mersman and Judyth Mersman, now known as Judyth Albritton, was filed on October 6, 2014. The decree provided in part:

> **5. REAL ESTATE.** The parties own certain real estate that is divided between the parties as follows:
> **5.1. Location and Description.** The real estate has a street address of 66785-220th Street, Nevada, Iowa, and is legally described as:
> The West ½ of the SE ¼ of the SE ¼ and the SW ¼ of the NE ¼ of the SE ¼, all in Section 35, Township 84 North, Range 22 West of the 5th P.M., Iowa.
> Parcel Numbers #07-35-400-405 and #07-35-400-250.
> **5.2. Title to Russell.** Russell shall have as his property the real property described herein above subject to the terms below.
> **5.3. Payment to Judyth.** Russell shall pay to Judyth for her interest in the property the sum of $60,000.00 as follows: Beginning

---

[1] Mersman has specifically waived filing a brief in this matter.

on January 1, 2015, and continuing on a monthly basis thereafter, $1,000.00 per month for a period of 60 months or until paid in full. Russell may pay the balance owed in full at any time. Any amount unpaid when due shall draw interest at the rate of 10% per annum. Said amount is a judgment which shall constitute a lien on the real estate.

**5.4. Mortgage and Other Expenses.** Russell shall be solely responsible for payment of mortgages, real estate taxes, insurance, utilities, repairs or other expenses related to the property and shall remove Judyth's name from any debt associated with this real estate no later than January 1, 2020. Until Judyth's name is removed from any such debt, Russell shall hold and save Judyth harmless from any personal liability for said mortgage and note.

**5.5. Quit Claim Deed.** Judyth shall sign a Quit Claim Deed, prepared by counsel for Russell and approved by counsel for Judyth, transferring Judyth's interest to Russell upon payment in full of the $60,000.00 amount and removal of her name from any debt on the property.

**5.6. Sale of Real Estate.** If any one of the monthly payments required as set forth above is 10 days or more delinquent, or if Judyth's name has not been removed from the debt on the real estate no later than January 1, 2020, whichever is the first to occur, Russell shall be required to immediately list the real estate described above to pay Judyth any amount remaining of the $60,000.00 award, plus interest and to satisfy any remaining debt on the property in Judyth's name pursuant to the following terms:

Upon the delinquency of any monthly payment required above by at least ten days, or the failure to remove Judyth's name from the debt associated with this property no later than January 1, 2020, whichever is the first to occur, joint tenancy ownership of the real estate by the parties is hereby severed and the parties shall thereafter hold title as tenants in common. The real estate shall immediately be listed for sale with a realtor to be chosen by Russell. If Russell has not listed the property for sale within thirty days of the event requiring him to do so, Judyth shall have the right to choose the realtor and list the property for sale and Russell shall cooperate with signing any necessary listing agreement. Russell shall have a right to live in the house so long as he cooperates with all recommendations of the realtor regarding the sale of the property, including but not limited to maintaining the house in the manner recommended for sale. Judyth shall be equally involved in all decisions affecting the sale of the real estate. Russell shall cooperate with the sale of the real estate and if he does not, Judyth may return to Court to obtain approval or assistance from the Court regarding the sale. The parties shall follow all recommendations of the realtor regarding the listing price, sales price, terms of sale, condition of the property during sale, etc. The Court shall retain

jurisdiction over the issue of the sale of the real estate until such time as the real estate has sold and closing has occurred.

Upon the sale of the real estate and improvements, there shall first be deducted from the sale price the normal costs of sale including realtor commission, tax proration, abstracting, legal fees, transfer tax, and unpaid mortgage balances. Judyth shall be paid the amount remaining of the $60,000.00 owed by Russell from the remaining net proceeds. Judyth shall also be repaid any amount she has paid on the Bank of America debt referenced herein at paragraph 9.1.1 since April 15, 2014, minus all payments made by Russell since the entry of the Decree in this matter as repayment of said debt pursuant to the terms of section 9.1.1. Any remaining net equity or net loss shall belong solely to Russell, free and clear from any claim by Judyth. Russell shall be solely responsible for any loss or remaining debt upon sale and shall hold Judyth harmless therefrom. Russell shall be entitled to claim as a tax deduction in 2014 any interest and taxes paid for the real estate.

On December 16, 2014, a "motion to enforce decree and for specific performance" was filed by "Intervenors Jarod J. Pedersen and Heather R. Pedersen." The motion asserted the Pedersens were "interested parties in a parcel of real estate that forms a prominent part of the subject matter of the above action" and asked that the court "enforce[ ] the Decree of Dissolution with regard to disposition of the real property involved and Order[ ] Specific Performance of a certain 'Offer to Buy Real Estate and Acceptance.'"

In their motion to enforce, the Pedersens asserted that on October 27, 2014, they submitted to Mersman an offer to buy the real estate in Story County, Iowa, described as follows:

> The West One Half of the Southeast Quarter of the Southeast Quarter of Section 35, Township 84, Range 22 West of the 5th P.M. in Story County Iowa, also known as 66785 220th Street, Nevada, Iowa 50201-7624 and bearing tax parcel I.D. Numbers 07-35-400-405 and 07-35-400-405
>
> with any easements and appurtenant servient estates, but subject to the following: a. any zoning and other ordinances; b. any

covenants of record; c. any easements of record for public utilities, and roads and highways, hereafter designated "The Real Estate."

    2. PRICE. The purchase price shall be $180,000.00 payable at Seller's Residence or such other location as designated by Sellers, as follows: $1,000.00 earnest money submitted with this Offer to be held in the Client Trust Account of John L. McKinney, Seller's Attorney, and the balance of $179,000.00 payable in cash at the time of closing and possession. This offer is not contingent on Buyers' sale of their existing residence.

The Pedersens asserted further that Mersman accepted the offer on October 31, 2014, but,

on November 25, 2014, the undersigned attorney received a letter from [Mersman's attorney] Mr. McKinney dated November 21, which letter stated that Russell was "rescinding" his Offer because Judy was the owner of one-half of the property and she refused to cooperate with the sale and provide a deed for her alleged "one-half interest." Mr. McKinney enclosed a check on his trust account for $1,000.00 and stated the closing was cancelled.

    11. The same date, the undersigned attorney replied to Mr. McKinney by letter, FAX and e-mail, stating among other things, that "rescission" was not a label that could be arbitrarily pinned on an intentional, unilateral breach of contract by the seller, and that Jarod and Heather intended to proceed with the purchase. Mr. McKinney's original letter along with his check for $1,000.00 was enclosed and returned to him.

    . . . .

    18. Jarod and Heather have at all times been ready, willing and able to complete the purchase of the real estate they contracted for. The cash required for full payment of the acreage is in their bank and ready to disburse to the lienholders and Judy. The Pedersens have done absolutely nothing to breach the Agreement.

    19. Jarod and Heather, having contracted in *more than* good faith, are third party beneficiaries to the sale contemplated in the Agreement between Russell and Judy and confirmed by the Court's Decree. Moreover, they are entitled to Specific Performance of their Offer, as this property is unique and is what they contracted for.

    20. Pursuant to Paragraph 15(c) of the attached Offer, signed and agreed to by Russell [Mersman], either party is entitled to "utilize any and all other remedies or actions at law or in equity available to them and shall be entitled to obtain judgment for costs and attorney fees." Specific Performance is an equitable remedy for the breach of a contract to sell real property.

21. Pursuant to the same Paragraph 15(c), Intervenors are entitled to an award of their attorney's fees incurred in prosecuting the enforcement of the Offer.

WHEREFORE, Jarod and Heather respectfully move the Court for the following Orders:

A. For an Order setting this matter for hearing on the earliest available Court and Motion Day. All or nearly all of the evidence on behalf of the Intervenors is in written form, and in light of the fact that Russell will walk away debt free and Judy will obtain her entire $60,000.00 before it even comes due, the only reason either of them can truthfully give the Court for their refusal to perform is simply "We just changed our minds and don't want to do it." A one-half hour hearing is more than sufficient to hear the evidence.

B. In light of Section 5.6 of the Agreement, confirmed by the Court's Decree, which states "The Court shall retain jurisdiction over the issue of the sale of the real estate until such time as the real estate has sold and closing has occurred[.]," for an Order directing that notice of hearing be served on Russell's counsel, Mr. McKinney by EDMS, and served on Judy by ordinary first class mail to her address of record as shown on the records of the Clerk of this Court. (Their dissolution was final on October 6, 2014, a little over two months ago.) Notice should also be sent to her e-mail address which is judy@*** as shown on the attached Exhibit 2.

C. At the conclusion of the hearing requested above, for an Order directing counsel including Judy's attorney, if any—to prepare the necessary closing documents and promptly schedule a closing in the office of Mr. McKinney and further, if either party refuses to sign the necessary documents, for an Order directing the Clerk of Court to execute the necessary documents of transfer upon presentation to the Clerk of an affidavit signed by either attorney that one or both parties has refused to sign the documents, all pursuant to Section 11 of the Agreement and the statutory citations to the Code of Iowa set forth therein.

D. For an Order awarding reasonable attorney's fees to the undersigned attorney for the Intervenors, to be approved by the Court, and for the costs of this action.

E. For an Order directing the Clerk of Court to list this action in the *Lis Pendens* index as provided by J.C. Sec. 617.10, *et seq.* The legal description is set forth in attached Exhibit 1.

Albritton filed a motion to dismiss, asserting "there is no evidence that [she] was served with Original Notice or Petition in this matter"; "[p]ursuant to Iowa Code Section 598.3, no actions may be joined with a dissolution action"; "[t]he [Pedersens] have no standing to compel a titleholder of the real estate to

sell their interest in real estate"; and "[a] person not party to the dissolution order has no standing to request a court enforce a dissolution order."

Mersman, too, filed a motion to dismiss, stating Albritton "was given judgment as against Respondent Mersman, in the amount of $60,000.00 as her share of the real property jointly owned by the parties to the dissolution," which "judgment has not either partially or wholly been satisfied, and remains a lien against the real property that the Intervenors are attempting to purchase." He maintained, "Specific performance is not a remedy that can be used to enforce a real estate contract where the title holder cannot convey marketable title. Also, where there is impossibility of performance, specific performance cannot lie."

The Pedersens filed a resistance to the motions to dismiss, asserting they had a right to intervene in the dissolution proceeding, citing *Wharff v. Wharff*, 56 N.W.2d 1 (Iowa 1952). They also contended service on Albritton was accomplished when Mersman served her with original notice of the dissolution "long ago" and the court retained jurisdiction over the sale of the property by virtue of the dissolution decree language so stating.

In regards to Mersman's motion to dismiss the Pedersens claimed,

This Court has the authority to enter a Decree of Specific Performance, require Russell to contribute the small amount of cash required to close this transaction, and Order both parties to execute the necessary closing documents as required by their own Settlement Agreement which became the Final Decree of the Court when their voluntary stipulation was approved.

A hearing was held on January 5, 2015,[2] after which the court entered an order stating:

---

[2] No transcript of the proceedings was made.

"Intervenors" Jarod J. Pedersen and Heather R. Pedersen personally appeared with their attorney Donald Juhl.

Intervenors have interjected themselves into this closed dissolution of marriage file in an attempt to enforce the terms and provisions of an agreement for the sale of real estate entered into by them and petitioner, Russell Mersman. They assert that by reason of the decree of dissolution of marriage entered herein on October 3, 2014, Russell Mersman is the legal title holder of certain property locally known and described as 66785-220th Street, Nevada, Story County, Iowa.

Respondent, Judyth Albritton, has refused to cooperate with the intervenors in the transfer of the real estate, claiming that she is a joint tenant with her former husband in the ownership of the property and she does not wish to sell. She has not signed the real estate contract and apparently prefers to sell the property to other parties.

Intervenors now wish to enforce the provisions of the decree as they interpret them and force Judyth Albritton to clear title to the real estate.

Both [Mersman and Albritton] have filed motions to dismiss intervenors' motion.

A review of the file reveals that although Jarod Pedersen and Heather Pedersen have denominated themselves as intervenors in this dissolution of marriage action, they do not qualify as intervenors under Iowa R. Civ. P. 1.407. That rule sets forth when interventions may occur as a matter of right and when they may be granted as permissive by the court. Attempting to intervene into a closed case is not allowed either as a matter of right or by permission.

Accordingly, the motion filed by Jarod J. Pedersen and Heather R. Pedersen must be dismissed.

The Pedersens filed a motion to amend or modify the ruling pursuant to Iowa Rule of Civil Procedure 1.904(2), asserting there was no procedural bar to intervening in a "closed case," disagreeing the case was "closed" in any event, and asserting they had an interest in the property distributed in the dissolution and thus "had an absolute right to intervene." The court denied the motion, finding a rule 1.904(2) motion was not available as its ruling had been "based on legal principles alone."

**II. Discussion.**

The Pedersens appeal, contending they qualify as intervenors of right, and the district court erred in concluding they were barred from intervening because the case was "closed."

We begin by noting the Pedersens have never filed an application to intervene nor did they serve a motion to intervene upon the parties to the dissolution action—both of which are required by Iowa Rule of Civil Procedure 1.407. Rather, they filed a "motion to enforce decree and for specific performance." Only after Mersman's and Albritton's motions to dismiss were filed did the Pedersens assert that they were entitled to intervene.

The ability to intervene in an action is governed by Iowa Rule of Civil Procedure 1.407. The Pedersens assert they have a right to intervene in the post-decree dissolution action under rule 1.407(1)(b), which provides:

> (1) *Intervention of right.* Upon timely application, anyone shall be permitted to intervene in an action under any of the following circumstances: . . . (b) When the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
> . . . .
> (3) *Procedure.* A person desiring to intervene shall serve a motion to intervene upon the parties. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought.
> (4) *Disposition.* The court shall grant interventions of right unless the applicant's interest is adequately represented by existing parties. The court shall consider applications for permissive intervention and grant or deny the application as the circumstances require. The intervenor shall have no right to delay, and shall pay the costs of the intervention unless the intervenor prevails.

Even if we quibble with the district court's terminology that there is no right to intervene in a "closed case," the sentiment is a correct statement of the law. In *Morse*, 77 N.W.2d at 623, persons filed a post-dissolution motion to intervene, asserting they

> held by virtue of a deed executed, delivered and recorded; that the intervener or interveners held the legal title to the respective properties prior to the commencement of the divorce action and the attachment and levy therein made; and the title of the respective interveners is paramount to and superior to any title, lien or claim of the plaintiff, Belle Morse. Each of the interveners ask their claims be investigated, upon hearing the levy under the attachment in the divorce action be released and the court grant such relief as may seem just in the premises.

The district court, after a trial on the *Morse* motion to intervene, ruled it did not have jurisdiction to determine the matter. The supreme court stated, "*It is the general rule intervention will not be allowed after final judgment or decree has been entered.*" *Morse*, 77 N.W.2d at 628 (emphasis added). However, the *Morse* court held that the

> parties have sought the jurisdiction of the court *and have waived any objection thereto*, *as they did in the present case*, *the question of jurisdiction cannot thereafter be successfully raised*. And this should be equally true even where a petition of intervention is filed after a decree has been entered and no appeal was taken. This would also be the situation where cross-petitions are filed to the petitions of intervention and the issues raised by the respective parties are submitted to and tried by the court.
> By virtue of the fact the interveners by their actions have waived their right to question the jurisdiction of the court it is our holding the trial court was in error in dismissing the petitions of intervention and plaintiff's cross-petitions. Consequently we reverse and remand the cause for a further consideration of the evidence originally submitted and such other matters as may be later presented.

*Id.* (emphasis added).

There is no such waiver in the case before us. Neither Mersman nor Albritton waived their objection to the Pedersens' attempt to inject themselves in the completed dissolution proceedings. The general rule is thus applicable—intervention is not allowed after a decree is entered. *See id.*

The Pedersens cite *Wharff*, 56 N.W.2d at 3-4, for support. The case before us, however, is in a different procedural phase. *Wharff* was a dissolution action where one issue was the division of realty the parties' held in tenancy in common but which had been purchased with money the wife held in trust for children by a previous marriage. *Wharff*, 56 N.W.2d at 2. The wife's children from the previous marriage moved to intervene in the dissolution action, asking to have a trust for their benefit imposed on the realty. *Id.* Then-civil procedure rule 75, stated: "Any person interested in the subject matter of the litigation, or the success of either party to the action, or against both parties, may intervene *at any time before trial begins*,[3] by joining with plaintiff or defendant or claiming adversely to both." *See id* at 2-3 (emphasis added). The supreme court allowed the intervention, noting the divorcing parties had "offered for the decision of the court the question of the ownership of certain realty, as an incident to their divorce suit." *Id.* at 3. The court opined:

> Upon determination of a divorce suit, if a divorce be granted, it is the duty of the trial court to make such order as may be right concerning alimony, support, and division of the property of the parties. There seems every reason in policy why, if there are third parties claiming an interest in either the real or personal property, the entire matter should be decided at once. Such a course will do

---

[3] Rule 1.407(1) states, "Upon timely application, anyone shall be permitted to intervene in an action under any of the following circumstances . . . ." The language from the former rule suggests when an application would be "timely," i.e., at any time before trial begins.

> away with a multiplicity of suits and will enable the court to make orders concerning property rights and allowances with a full knowledge of the exact extent of the interests of the litigants. In the case at bar, if the court is not to be permitted to know the real interest of the plaintiff and defendant in the realty and personalty now owned by them, if this must be left to determination in a future and separate suit brought by the proposed intervenors, it will be greatly hampered in making a fair order. Principles of expediency and of a fair administration of justice approve the determination of all rights in one action.

*Id.* at 4. The court also stated that even if the trial court found neither party was entitled to divorce, nonetheless, "[a] trust can be impressed, or denied, regardless of whether the interests of the plaintiff and defendant are determined." *Id.* at 5. Those considerations are not present in the instant case. The Pedersens do not claim they had an interest in the property prior to entry of the dissolution decree. Rather, they claim to be aggrieved by Russell Mersman's rescinding the contract for sale of the property entered into after the decree was filed. *Wharff* and the expediency considerations expressed therein are not applicable here.

The Pedersens claim there is support for their motion to be found in *In re Marriage of Ballstaedt*, 606 N.W.2d 345 (Iowa 2000). We do not find the case applicable. *Ballstaedt* involved a post-dissolution action for alimony and child support and an income withholding order. 606 N.W.2d at 347. The "heart of the appeal" was whether the proceeds from an installment sale entered into while the dissolution action was pending constituted income subject to withholding. *See id.* The assignee of the sellers' rights was found to have a right to intervene in the withholding action. *See id.* at 350.

The Pedersens contend that Mersman's and Albritton's motions to dismiss "are nothing more than a thinly veiled assault upon a written, enforceable contract to purchase real property." This argument itself suggests the dissolution action is not the proper vehicle for their claim. The Pedersens assert a breach-of-contact claim against Mersman. Albritton is not party to that contract. *Cf. State ex rel. Miles v. Minar*, 540 N.W.2d 462, 465 (Iowa Ct. App. 1995) (upholding trial court's denial of mother's motion to intervene in an action to establish paternity filed by the child support recovery unit against putative father and noting "[l]itigation would not be reduced by intervention, and [mother's] presence in the lawsuit as a party would have done little to assist in the efficient disposition of the case"). The Pedersens are not parties to the dissolution action, did not have an interest in the property prior to the dissolution decree being filed, and they have presented no support for their claim that they are third-party beneficiaries of the decree.

We affirm the dismissal of their motion to enforce decree and for specific performance.

**AFFIRMED.**